```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
LISA ZALTZ,                          :
                                     :
                    Plaintiff,       :
            v.                       :   08 Civ. 11225 (BSJ)
                                     :   Opinion & Order
WELLS FARGO HOME MORTGAGE,           :
                                     :
                    Defendant.       :
                                     :
------------------------------------ X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

On September 17, 2008, Plaintiff Lisa Zaltz, proceeding *pro se*, filed suit in New York Supreme Court against Defendant Wells Fargo Home Mortgage asserting claims arising from her employment and subsequent termination as a Mortgage Sales Associate at Wells Fargo. Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1441 & 1446. Before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's is DENIED.

## BACKGROUND[1]

This case arises from the employment and subsequent termination of Plaintiff from her position as a Mortgage Sales Associate at Wells Fargo.

In August 2002, Plaintiff completed and signed an Employment Application ("Application") for a position with Defendant. (Def's. Rule 56.1 Stmt. ¶ 3; Zaltz Dep. 36:5-39:6, July 8, 2009.) The Application specifically stated, "[I]f I am hired by Wells Fargo I understand and agree that: Employment and compensation can be terminated for any reason with or without cause and with or without notice, at any time, at the option of Wells Fargo or myself. This employment application becomes part of the terms and conditions of employment." (Def's. Rule 56.1 Stmt. ¶ 8; Zaltz Dep. 38:20-39:3, July 8, 2009; Smith Aff. ¶ 6, Ex. E at 3.) During her deposition, Plaintiff stated that when she applied for a position with Defendant she understood that her employment would be at-will, and that she could stop working

---

[1] These facts are drawn from Defendant's Local Rule 56.1 statement and from Plaintiff's submissions.  Under Local Civil Rule 56.1(c), "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted...." See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party...fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").
  In addition, construing Plaintiff's pro se pleadings liberally, the Court treats the Complaint, made on personal knowledge, as an affidavit that is sufficient to create an issue of fact for the purpose of summary judgment. See Fed. R. Civ. Pro. 56(e); Whitaker v. Super, No. 9:08-CV-0449(LEK/GHL), 2009 WL 5033939 at *3 (N.D.N.Y. December 14, 2009) (citing Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004)).

2

for Defendant at any time. (Def's. Rule 56.1 Stmt. ¶ 7; Zaltz Dep. 40:10, July 8, 2009.)

Plaintiff was hired and employed as a Mortgage Sales Associate by Defendant from September 3, 2002 to September 18, 2002. (Def's. Rule 56.1 Stmt. ¶ 1; Zaltz Dep. 86:11, 88:17, July 8, 2009.) Plaintiff worked at Defendant's New York City office on eleven working days. (Def's. Rule 56.1 Stmt. ¶ 2; Zaltz Dep. 88:20, July 8, 2009.) On September 3, 2002, her first day of work, Plaintiff entered into an Employment Agreement ("Agreement"). (Def's. Rule 56.1 Stmt. ¶ 11; Zaltz Dep. 51:20-53:25, July 8, 2009.) The Agreement specifically provided: "Employee's employment with Employer shall be at all times at-will employment and Employer reserves the right to terminate Employee's employment and this Agreement for any reason and/or to modify any of the terms of Employee's employment with or without cause, and with or without notice, at any time and for any reason." (Def's. Rule 56.1 Stmt. ¶ 13; Zaltz Dep. 60:21-61:6, July 8, 2009; Smith Aff. ¶ 7, Ex. F at 1.) At the time, Plaintiff understood that her position was at-will and could be terminated by her or by Defendant at any time and for any reason. (Def's. Rule 56.1 Stmt. ¶ 14; Zaltz Dep. 62:15-64:11, July 8, 2009.) In addition, Plaintiff's signature verified, "I have read, fully understood and agree to the terms of this

3

Agreement." (Def's. Rule 56.1 Stmt. ¶ 12; Zaltz Dep. 57:13; Smith Aff. ¶ 7, Ex. F at 4.)[2]

Plaintiff resigned her employment by letter dated September 18, 2002. (Def's. Rule 56.1 Stmt. ¶ 15; Zaltz Dep. 88:18, 105:2, July 8, 2009.) The letter was prepared by Lance Topol, Plaintiff's supervisor, and signed by both Plaintiff and Topol.

Plaintiff claims that during her eleven days at Wells Fargo, Topol sexually harassed her to the point that she was forced to resign. (Def's. Rule 56.1 Stmt. ¶ 16; Pl. Dep. 39:11, July 8, 2009.) Plaintiff alleges that Topol made numerous sexual advances during work, including "physically hitting" on her and threatening to fire her if she did not go out to dinner or have sexual relations with him. (Compl. at 1-5.) According to Plaintiff, Topol brought in pornography to show her, made sexual jokes about himself and Plaintiff, constantly "hover[ed] over her and breathe[ed]" on her, and tried to kiss her. (Compl. at 3.) Plaintiff also maintains that the harassment continued outside of work.[3] For example, she claims that Topol "put his papers in my computer and took my stuff...sending me

---

[2] While Plaintiff claims that she had a verbal contract with Defendant in addition to the Agreement, (Compl. at 3,) Plaintiff does not explain how the verbal contract differed from the Agreement.

[3] Plaintiff claims that Topol told her he tapped her phones and made prank phone calls to her and her family business because he was "jealous of her advancements." (Compl. at 1-2.) In addition, Plaintiff asserts that Topol's "[law school] friends followed me off the internet and to club med several years ago," actions which were "'mildly' flattering except they stole my key at club med, broke into my room" and "pictures of my boyfriend and I were stolen." (Compl. at 4.)

4

pornographic documents." (Compl. at 6.)[4] Additionally, Plaintiff appears to claim that Topol discriminated against her due to her religious beliefs by threatening to fire her if she did not work on Jewish holidays. (Compl. at 1.)[5] Plaintiff claims Topol's harassment and discrimination led to various severe ailments. (Compl. at 2.)[6]

At her deposition, Plaintiff testified that after her September 18, 2002 resignation, she had no further contact with Topol. (Def's. Rule 56.1 Stmt. ¶ 17; Zaltz Dep. 122:12, July 8, 2009.) Thus, all of Topol's alleged harassment and discriminatory conduct occurred on or before September 18, 2002. (Def's. Rule 56.1 Stmt. ¶ 18; Zaltz Dep. 122:15, July 8, 2009.)[7]

It is undisputed that Plaintiff neither filed a complaint with the Equal Employment Opportunity Commission ("EEOC") nor filed a Workers' Compensation claim with Defendant. However, on September 17, 2008 (nearly six years later), Plaintiff instituted an action in New York Supreme Court. (Def's. Rule

---

[4] The "stuff" included "valuable entrance essays for top graduate schools that were totally amazing...[and] elaborate novels that would for sure be published..." (Compl. at 5.)
[5] Relatedly, Plaintiff claims that Topol used the online chat username "stagecoachjew" (an apparent reference to Wells Fargo) to harass her. (Compl. at 3.)
[6] The ailments included stomach cramps, vomiting, anxiety, mental blackouts, uncontrollable urination, depression, insomnia and panic attacks. (Compl. at 2-4, 7-9.)
[7] As discussed in greater detail below, in her opposition to Defendant's motion for summary judgment, Plaintiff alleges that Topol contacted her after September 18, 2002. However, for the reasons discussed below, Plaintiff's deposition testimony controls.

5

56.1 Stmt. ¶ 19; Zaltz Dep. 127:6, July 8, 2009.) Defendants removed the action to this Court in December 2008.

In her Complaint, Plaintiff asserts claims for (1) sexual harassment and religious discrimination; (2) personal injury; (3) violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII");[8] and (4) breach of contract and wrongful termination.[9] Defendants now move for summary judgment. Plaintiff cross-moves for summary judgment.[10]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed

---

[8] Although Plaintiff does not specifically refer to Title VII, as discussed below the Court liberally construes her pleadings to include this cause of action.

[9] Plaintiff also asserts a cause of action for "vicarious liability." (Compl. at 1, 7.) However, this is not a separate cause of action but rather a theory by which one can seek to hold a third party responsible for the tort of another individual. See Brothers v. New York State Elec. & Gas Corp., 11 N.Y.3d 251, 257-58, 869 N.Y.S.2d 356, 356, 898 N.E.2d 539, 542-43 (2008).

[10] Plaintiff's papers in opposition to Defendant's Motion for Summary Judgment include a request "for a motion for Summary Judgment in my favor." (Zaltz Opp. at 1.) The Court construes this as a Cross-Motion for Summary Judgment, as well as an opposition to Defendant's Motion for Summary Judgment.

6

facts establish her right to judgment as a matter of law." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

### DISCUSSION

Plaintiff asserts that (1) Topol, an employee of Defendant, sexually harassed her and discriminated against her on account of her religion; (2) she suffered personal injuries as a result of Topol's conduct; (3) Defendant violated Title VII; and (4) Defendant breached the Agreement and wrongfully terminated her.

**1. Sexual Harassment and Religious Discrimination**

Plaintiff's claims of sexual harassment and religious discrimination pursuant to New York Executive Law § 296 are time-barred. The statute of limitations under New York State Human Rights Law ("NYHRL") for sexual harassment and religious discrimination is three years. See C.P.L.R § 214(2); Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 93 (1983); Miccio v. Fits Sys., Inc., 25 A.D.3d 439, 439, 810 N.Y.S.2d 13, 14 (1st Dep't 2006); see also Magnoni v. Smith & Laquercia, LLP, No. 07-CV-9875(VM), 2010 WL 1253178 at *8 n.6 (S.D.N.Y. Mar. 22, 2010) (citation omitted).

Here, there is no dispute that Plaintiff resigned from employment September 18, 2002 and filed this action on September 17, 2008, almost 6 years later. However, the parties disagree about when Topol stopped harassing Plaintiff. Initially, Plaintiff testified in her deposition that there had been no contact with Topol after she resigned on September 18, 2002. (Zaltz Dep. 122:12, July 8, 2009.) But in her opposition to Defendant's Motion for Summary Judgment, Plaintiff alleges that "Topol did continue to bother me after my job loss at Wells Fargo for years later." (Zaltz Opp. at 1.) Plaintiff relies on this allegation in arguing that her claims are not barred by the three-year statute of limitations.

"A Party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for

8

summary judgment." Mack v. United States, 814 F.2d 120, 124-125 (2d Cir. 1987) (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)); see also In re Zyprexa Prods. Liab. Litig., 688 F.Supp.2d 130, 149 (E.D.N.Y. 2009) ("Post-deposition sworn statements which have not been subjected to cross-examination are of limited persuasive effect for purposes of a motion for summary judgment."). Based on Plaintiff's deposition testimony (rather than her post-deposition statements), the statute of limitations on her sexual harassment and religious discrimination claims began to run on September 18, 2002. Therefore, Plaintiff has failed to adduce sufficient evidence to permit a trier of fact to find that Topol harassed or discriminated against Plaintiff within three years of the filing of her Complaint.[11] Accordingly, Plaintiff's claims for sexual harassment and religious discrimination under NYHRL are time-barred and must be DISMISSED.

### 2. Tort claims for personal injury

---

[11] In attempting to avoid being time-barred, Plaintiff alleges: "I am not over my statutes of limitations for any claims....[T]he laws of disability give me longer time frames anyway." (Zaltz Opp. at 1.) However, Plaintiff has presented no evidence demonstrating that equitable tolling is warranted on the basis of any disability. Plaintiff states that she suffered from various ailments, but she provides no particularized description of how those ailments prevented her from filing a complaint within the statutory period. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (denying equitable tolling because Plaintiff presented only "conclusory and vague claims, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights").

9

Next, Plaintiff appears to claim that she suffered personal injuries due to Topol's intentional infliction of emotional distress. Plaintiff asserts that Topol's harassment at work caused her severe ailments. According to Plaintiff, Topol made "numerous prank phone calls," told her to "put your fingers in an electric outlet," screamed at her for "fun," and asked her to have an affair. (Compl. at 1-3.) Plaintiff also seems to assert a claim for conversion, alleging that Topol stole a novel she wrote, resulting in a loss of royalties. (Zaltz Opp. at 1.)

Defendant contends that Plaintiff's personal injury claim is barred under New York Workers' Compensation Law § 11. The Court disagrees. Since it seems that the asserted claims are intentional torts, they fall within an exception to the general exclusivity of the Workers' Compensation Law. See Acevedo v. Consol. Edison Co. of N.Y., Inc., 189 A.D.2d 497, 500-01, 596 N.Y.S.2d 68, 71 (1st Dep't 1993)("To sufficiently plead an intentional tort that will neutralize the statute's exclusivity there must be alleged an intentional or deliberate act by the employer directed at causing harm to the particular employee."); see, e.g., Reed v. Paramount Wire Co., Inc., No. 04-CV-8059(SAS), 2005 WL 1476455 (S.D.N.Y. June 21, 2005). Here, Plaintiff alleges that Topol intentionally inflicted emotional distress when he harassed her at work and intentionally converted her property by stealing her novel. Therefore, her

10

personal injury claims are not within the purview of the Workers' Compensation Laws.

Nevertheless, these claims are time-barred. In New York, there is a one-year statute of limitations for intentional infliction of emotional distress. See C.P.L.R. § 215(3); Hansen v. Petrone, 124 A.D.2d 782, 782, 508 N.Y.S.2d 500, 500 (2d Dep't 1986); see also Sloane v. Town of Greenburgh, No. 01-CV-11551(MBM), 2005 WL 1837441 at *3 (S.D.N.Y. July 27, 2005). And there is a three-year statute of limitations for conversion claims. See C.P.L.R. § 214(3); Malanga v. Chamberlain, 71 A.D.3d 644, 644, 896 N.Y.S.2d 385, 386 (2nd Dep't 2010); see also Daisley v. FedEx Ground Package Sys., Inc., No. 09-CV-0011, 2010 WL 1838667 at *1 (2nd Cir. May 10, 2010).

Plaintiff's claims for intentional infliction of emotional distress and conversion are therefore barred by the statutes of limitation. As discussed above, the last contact between Plaintiff and Topol was on September 18, 2002, yet Plaintiff's action was not filed until September 17, 2008, almost six years later. Therefore, Plaintiff's intentional infliction of emotional distress and conversion claims must be DISMISSED.

### 3. Title VII

As discussed above, the Court liberally construes the Complaint to include a cause of action under Title VII. However, this claim is barred due to Plaintiff's failure to exhaust her

11

administrative remedies with the EEOC. <u>Wells v. Mount Vernon Hosp.</u>, No. 01-CV-9129(RCC), 2002 WL 1561099 at *2 (S.D.N.Y. July 15, 2002) ("The filing of a timely charge with the EEOC is a statutory perquisite to Title VII and ADEA claims.") As it is undisputed that Plaintiff did not file a charge with the EEOC before instituting this action, this claim must be DISMISSED.

### 4. Breach of contract and wrongful termination

Finally, Plaintiff asserts that Defendant breached the Agreement and wrongfully terminated her.

Plaintiff's breach of contract claim is without merit. Under New York law, a breach of contract claim requires (1) the existence of a contract, (2) plaintiff's performance on the contract, (3) defendant's breach of the contract and (4) resulting damages. <u>See</u> <u>Ross v. FSG Private Air, Inc.</u>, 03-CV-7292(NRB), 2004 WL 1837366 at *3 (S.D.N.Y. Aug. 16, 2004). When reviewing a breach of contract claim, "[t]he task of the court is to enforce the plain meaning of an unambiguous agreement, rather to accept a construction that would render a purposeful provision of a contract meaningless." <u>Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.</u>, 323 F. Supp. 2d 525, 539 (S.D.N.Y. 2004) (quoting <u>Bluebird Partners, L.P. v. First Fid. Bank, N.A.</u>, 248 A.D.2d 219, 223, 671 N.Y.S.2d 7, 12 (1st Dep't 1998)). To state a cause of action for breach of an at-will employment contract, a plaintiff must point to an "express agreement" by

12

defendant to limit its unfettered right to terminate its employees. See Fiammetta v. St. Francis Hosp., 168 A.D.2d 556, 557, 562 N.Y.S.2d 777, 778 (2d Dep't 1990) ("Courts will not infer a contractual limitation on the employer's right to terminate at-will employment absent an 'express agreement' to that effect which was relied upon by the employee." (internal citation omitted)).

Defendant did not breach the Agreement. The Agreement unambiguously states that the employment relationship is at-will. There is no qualification. (Zaltz Dep. 60:18-64:11, July 8, 2009; Smith Aff. ¶ 7, Ex. F at 1.) The Court credits Plaintiff's deposition testimony that she understood the import of this at-will contract. And while Plaintiff maintains that there was also a verbal contract, Plaintiff does not contend that the verbal contract in any way limited Defendant's right to terminate her at-will employment. (Compl. at 3.)

Moreover, because she signed an at-will employment contract, Plaintiff cannot assert a claim for breach of the implied obligation of good faith and fair dealing. Under New York law, there is no obligation of good faith and fair dealing implied in at-will employment contracts, as doing so would be incompatible with the at-will nature of the relationship. See Murphy, 58 N.Y.2d at 304-04; Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 335-36, 514 N.Y.S.2d 209, 304, 506 N.E.2d 919, 922-

13

23 (1987); McGimpsey v. J. Robert Folchetti & Assoc., 19 A.D.3d 658, 659, 798 N.Y.S.2d 498, 500 (2d Dep't 2005).

In addition, Plaintiff cannot bring a wrongful termination claim against Defendant. The New York Court of Appeals has expressly refused to recognize a cause of action for wrongful termination in the at-will employment context. See Murphy, 58 N.Y.2d at 300-01; see also Hall v. USAIR, Inc., No. 95-CV-3944, 1996 WL 228458 at *4 (E.D.N.Y. April 29, 1996); Riccardi v. Cunningham, 291 A.D.2d 547, 548, 737 N.Y.S.2d 871, 871-72 (2d Dep't 2002). Since Plaintiff was an at-will employee who understood at the time that she began working that Defendant could terminate her at any time for any reason, (Zaltz Dep. 38:20-39:3, July 8, 2009,) she has no claim for wrongful termination under New York law. Plaintiff cannot cure the deficiency in her wrongful termination claim by recasting it as a breach of contract claim. See Kanhoye v. Altana Inc., 686 F.Supp.2d 199, 214 (E.D.N.Y 2009) (citing Ingle v. Glamore Motor Sales, Inc., 73 N.Y.2d 183, 188-89, 538 N.Y.S.2d 771, 773-74, 535 N.E.2d 1311, 1313 (1989)).

The Agreement contains an Iowa choice of law provision. (Smith Aff. ¶ 7, Ex. F at 3.) To the extent that Iowa law governs claims arising under the Agreement, Iowa, like New York, is an at-will employment state wherein an employer may discharge an employee for good cause or for no cause, with two exceptions.

14

These exceptions create the tort of wrongful termination. See Graves v. O'Hara, 576 N.W.2d 625, 628 (Iowa 1998); see also Ballalatak v. All Iowa Agric. Ass'n, 781 N.W.2d 272, 275 (Iowa 2010).[12] The two exceptions recognized by Iowa courts are (1) discharges in violation of public policy and (2) when a unilateral contract is created by an employee handbook. Graves, 576 N.W.2d at 628. Since there is no allegation that there was an employee handbook, the only possible exception is for discharge in violation of public policy.

"The elements of the public policy exemption are: (1) [the] existence of a clearly defined public policy that protects employee activity; (2) the public policy would be jeopardized by the discharge from employment; (3) the employee engaged in the protected activity, and this conduct was the reason for the employee's discharge; and (4) there was no overriding business justification for the termination." Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 761 (Iowa 2009) (citing Lloyd v. Drake Univ., 686 N.W.2d 225, 228 (Iowa 2004)). To determine whether there is a clearly defined public policy that protects employee activity, courts look to whether the employee is: (1) exercising a statutory right or privilege, (2) refusing to commit an unlawful

---

[12] Similar to New York, Iowa rejects the theory of an implied covenant of good faith and fair dealing in employer-employee at-will relationships. Phipps v. IASD Health Serv. Corp., 558 N.W.2d 198, 204 (Iowa 1997).

15

act, (3) performing a statutory obligation, or (4) reporting a statutory obligation. See Jasper, 764 N.W.2d at 762.

Relevant here, there is an Iowa statute protecting against sexual harassment and religious discrimination in the workplace. See Iowa Code Ann. § 216.6. Thus, the first element of the public policy exemption is satisfied. However, there is no allegation--no less evidence--that Plaintiff's conduct was the reason for her discharge or that there was no business justification for her termination. Therefore, Plaintiff has no viable claim for wrongful termination under Iowa law.

Finally, Plaintiff claims that Topol's "sexual harassment invalidates the contract." (Zaltz Opp. at 1.) The Court disagrees. Plaintiff's sexual harassment claims must be brought under Title VII and NYHRL. As discussed above, Plaintiff's Title VII claim is barred due to her failure to exhaust administrative remedies and her NYHRL claim is time-barred. Moreover, Plaintiff may not bring her barred sexual harassment and religious discrimination claims in the guise of a breach of contract claim to circumvent the statute of limitations. Thus, Plaintiff has failed to raise any genuine issue of fact as to a breach of contract or wrongful termination claim. These claims are therefore DISMISSED.

16

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Cross-motion for Summary Judgment is DENIED. The Clerk of Court is directed to close the case.

**SO ORDERED:**

                                                    _/s/ Barbara S. Jones_
                                                    **Barbara S. Jones**
                                                    **UNITED STATES DISTRICT JUDGE**

Dated:    New York, New York
             July 31, 2010